(41 South. 439.)

No. 15,854.

STATE ex rel. ARKANSAS SOUTHERN R. CO. et al. v. KNOWLES et al.

(May 21, 1906. Rehearing Denied June 22, 1906.)

1. TAXATION — RAILROAD AID TAX — COLLECTION.

Where, under article 242 of the Constitution of 1879, and Act No. 35, p. 44, of 1886, and Act No. 153, p. 191, of 1894, upon the petition of property taxpayers, and agreeably to the promulgated result of a special election, a tax of five mills is levied, for 10 years, in aid of the construction of a railroad, such tax is to be collected each year, during the term thus fixed by the petition and election, upon the basis of the assessment of each year.

2. MUNICIPAL CORPORATIONS—AID TO RAILROADS—ELECTION—PETITION.

Under article 242 of the Constitution of 1879 and Act No. 35, p. 44, of 1886, and Act No. 153, p. 191, of 1894, the petition of the property taxpayers calling for an election upon the question of a tax in aid of the construction of a railroad need not specify the amount to be raised, the law mentioned being, in that respect, complied with when the petition designates a rate, or percentage, and a period, of taxation within the limits fixed by it, and such rate or percentage receives the requisite votes at the election.

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Lincoln; Robert Brooks Dawkins, Judge.

Application by the state, on the relation of the Arkansas Southern Railroad Company and others, for a writ of mandamus to George Knowles, assessor, and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

117 LA.—5

Holstead & Atkinson, for appellants police jury and interveners. Andrew Augustus Gunby, for appellees.

Statement.

MONROE, J. It appears from the record in this case that in December, 1897, agreeably to article 242 of the Constitution of 1879, and to Act No. 35, p. 44, of 1886, and Act No. 153, p. 191, of 1894, the taxpayers of the parish of Lincoln voted a special, annual tax of five mills, for 10 years, on the assessed valuation of the property of the parish, in aid of the construction of a railroad; it being stipulated, in the petition calling for the election, that the tax should be levied and collected in the same manner as other taxes assessed in the parish, and paid over to the railroad company, or its assigns, or successors, whenever the road should have been completed to the town of Ruston. The result of the election was promulgated by the police jury in January, 1898, at which time, also, that body ordered that the tax should be levied, for 10 years, whenever the railroad should have been completed, and put in operation, from Junction City to Ruston, and, the road having been so completed and put in operation in December, 1899, the police jury, in January, 1900, and in the same months of the years 1901, 1902, 1903, 1904, 1905, levied the tax for those years, respectively, with the other taxes of the parish. In July, 1905, however, an ordinance was passed relevying the taxes for the year, with the exception of the railroad tax, and repealing the ordinance which had been adopted in January, in so far as it conflicted with the ordinance thus, subsequently, adopted, and the assessor, assuming, apparently, that the prior ordinance had been entirely repealed, and failing and refusing to extend the railroad tax on his rolls, the assignees of the tax, with whom is joined the railroad company to which it was voted, bring this suit to compel him, by mandamus, to do so,

praying, also, for certain relief under the writ as against the sheriff and the police jury. The sheriff answers that he has always been ready to collect any taxes that are assessed, but the assessor and the police jury, appearing together, after setting up certain defenses which have not been insisted on in this court, for answer, say that the petition of the taxpayers and the ordinance levying the tax do not specify the amount of money to be raised, and hence that no tax was, or could have been, legally voted or levied; that, if any tax was legally voted, the aggregate amount to which relators are entitled is to be ascertained by multiplying the proceeds of the tax as predicated on the assessment for the year 1897 by the number of years during which such tax was to be levied, and, upon that basis, that relators would be entitled to $19,373.60, in addition to what they have already received, which amount can be realized, as they allege, from a tax of 1.62 mills per annum during the remaining years of the taxing period, even assuming that the assessments should not be increased. And, in this defense, the respondents are joined by certain citizens and taxpayers of the parish, who have intervened for that purpose.

It is admitted that interveners paid the tax in question without contest up to the date of the filing of this suit; that the assessment of the parish of Lincoln for 1897 was $1,373,465, and that for 1905 it was $2,390,979; that the total amount of the railroad tax, levied, assessed, collected, and paid over, for the years 1900, 1901, 1902, 1903, 1904, was $44,-299.69; that the railroad was completed to Ruston in December, 1899, and, shortly afterward, to the southern boundary of the parish, and is now being extended southward, from Winnfield, in the parish of Winn; and that its construction and operation have "been of immense benefit and advantage to the property holders of Lincoln Parish," in which parish the population, capital, and

values have largely increased within the past five years. It is further admitted that the Alexandria, Junction City & Shreveport Railroad Company, to which the tax was originally voted, consolidated with, and assigned its interest therein to, the Arkansas Southern Railroad Company; that the company last named, which is incorporated under the laws of Louisiana, built the railroad, "as specified in the petition of taxpayers and ordinance of the police jury"; that the tax was levied and collected in the name of the company up to the year 1905; and that said company has assigned its right thereto to its corelators in this suit, the evidence showing that the assignment was made for value received.

The learned judge a quo, in a well-considered opinion, reached the conclusion that the ordinance adopted by the police jury in January, 1905, had not been repealed by the later ordinance, in so far as the levy of the railroad tax for the year 1905 was concerned, and that the sheriff had not refused to collect such tax, and hence that there was no reason for issuing a mandamus against either of those parties, and he, accordingly, dismissed the proceedings as against them, made the writ peremptory as against the assessor, and rejected the demands of the interveners. From this judgment, the police jury and the interveners have appealed, and relators have answered, praying that the judgment be amended by ordering the police jury to levy the tax for the remaining years of the taxing period.

## Opinion.

Article 242 of the Constitution of 1879 authorized the enactment of laws for the levying of special taxes, upon the vote of the taxpayers, in aid of public improvement or railway enterprises, provided that such taxes should not exceed the rate of five mills per annum, nor extend for a longer period than ten years. Act No. 35, p. 44, of 1886, being an act to carry into effect the article thus

mentioned, contains the following, among other, provisions, to wit:

"Section 1. * * * That, whenever one third of the property tax payers * * * shall petition the police jury to levy a special tax in aid of any railway company or corporation, organized under the laws of this state, the said police jury shall order a special election to be held for that purpose and submit to the property tax payers * * * the rate of taxation and the purpose for which it is intended. * * *

"Sec. 2. * * * That the petition mentioned in section 1 of this act shall be in writing, shall designate the railway company, or corporation, and the percentage of the tax to be levied each year, and the number of years, not exceeding ten, during which it shall be levied. * * *"

"Sec. 4. * * * That if a majority in number and in value of the property tax payers * * * shall vote in favor of such levy of said special tax, then the police jury, for, and on behalf of, the parish, * * * shall immediately pass an ordinance levying such tax, and for such time as may have been specified in said petition, and shall designate the year in which such tax shall first be levied and collected. * * *"

"Sec. 6. * * * That the police jury * * * shall, when the vote is in favor of the levy of such taxes, levy and collect, annually, in addition to other taxes, a tax upon all taxable property * * * sufficient to pay the amount specified to be paid in such petition, and said police jury shall have the same power to enforce and collect any special tax that may be authorized by such election as is, or may be, conferred by law upon them for the collection of other taxes, which taxes, so collected, shall, from time to time, as the same are collected, be paid to the railway company or corporation named in such petition, or to such person, or persons, or partnership, or other company or corporation, to which the same may have been assigned.

"Sec. 7. * * * That the right to receive the whole or any portion of such taxes may be assigned and transferred by such railway company, or corporation to any person or partnership, or other company or corporation, and such person, partnership, or other company or corporation shall have the same right to enforce the collection and payment of such taxes as such railway company or corporation would have had if such assignment had not been made. * * *"

Act No. 153, p. 191, of 1894, merely extends the provisions of the act of 1886, which relate to elections in parishes, cities, and towns, to "parish wards." The petition of the taxpayers in the instant case prays that an election be ordered pursuant to the statutes above mentioned, and the vote of the property taxpayers be taken on "the question of levying a five mill tax, for 10 years, on the assessed valuation of the property of Lincoln parish, in aid, and to aid, the Alexandria * * * Railway Company in building a railroad * * * and to levy an annual tax of five mills per annum on the dollar of the assessed valuation of all the property in Lincoln parish, in each year, for a period of 10 years, in aid of said railroad as aforesaid. Said tax, so levied, to be collected as other taxes assessed in Lincoln parish, and the same paid over direct to the railroad company or its assigns or successors. The said tax to be levied and collected when said railroad has been constructed or completed to the town of Ruston, in said parish, and the same paid over as aforesaid to the said company."

Whether the taxpayers could legally have voted and bound themselves, or the property in the parish, for an amount, payable in 10 annual installments equal to the proceeds of a five mill tax to have been levied for 10 years upon the basis of the assessment of 1897, is a question which seems to us to present very serious practical difficulties, and one which need not be answered, since it is plain that, what, in point of fact, the property taxpayers of Lincoln parish did, was to vote the entire proceeds of a five mill tax, to be collected annually during 10 years, in the same manner as the taxes of the parish, and this they were authorized to do by the law, both constitutional and statutory, and, having done, must abide by. It may be remarked in this connection that the other parties interested in the matter evidently believed, and acted in the belief, that the entire proceeds of the tax had been voted, since relators, as late as 1903, in consideration of the assignment of the tax to them, released the railroad company from, and assumed, in its stead, obligations amounting to over $80,000. The learned counsel for the respondent seem to rely for the support of their position upon the

decision of this court in the case of Bennett v. Police Jury, 113 La. 68, 36 South. 891. But that was a case, arising under article 232 of the Constitution of 1898, and Act No. 131, p. 200, of that year, in which it appeared that a special tax had been voted for the purchase of grounds and the building of a schoolhouse, and in which it was held that, under the statute mentioned, it was essential that the petition of the taxpayers should have stated the amount proposed to be realized, each year, from the tax. After calling attention to several points of differences between the two cases, and after quoting section 2, of Act No. 131, p. 201, of 1898, and the corresponding section (2) of Act No. 35, p. 44, of 1886, the judge a quo, in his able opinion, says:

"As will be seen by reference to these two sections, the act of 1898 requires that the amount of each year's tax to be levied be set forth in the petition, while, in the act of 1886, it is the percentage of the tax to be levied each year that is required to be set forth in the petition. * * * Percentage and amount are not equivalent words, but percentage and rate are, in many instances, convertible terms. The taxpayers who voted the special tax in favor of the Alexandria * * * Railway Company evidently understood the word 'percentage' to mean 'rate,' for, in their petition, they set forth the rate that should be annually collected."

We concur in this view, and may add that, if it should be said that the words "percentage of the tax to be levied each year," as used in the act of 1886, mean the "proportion of the tax of five mills which is authorized by law, and hence that the petition in the instant case should have designated the proportion of that tax intended to be levied, the answer is that the petition so designates the whole of the five mills, and that such designation is strictly within the meaning of both the statute and the Constitution. We also concur with our learned Brother in the opinion that the ordinance of January, 1905, in so far as it levies the tax here in question, is not repealed by the ordinance adopted in July of that year, and, as the police jury had complied, so far as it could, at that time, with section 4 of the act of 1886, by levying the tax, for

the whole period, immediately after the taxpayers had voted in favor of such tax, and had complied with section 6 of that act, by making the annual levy for the year 1905, there is no immediate duty now resting on it, the performance of which can be enforced by mandamus. There are some other points presented, which, however, in view of the conclusions reached, we find it unnecessary to decide.

Judgment affirmed.

NICHOLLS, J., takes no part, not having been present when the case was argued.