## BRASHEARS v. BARNETT.
### No. 1372.

Court of Appeal of Louisiana.
First Circuit.
June 30, 1934.

Ellis & Ellis, of Amite, for appellant.

Reid & Reid, of Hammond, for appellee.

ELLIOTT, Judge.

John P. Brashears is the plaintiff in a suit against J. Sidney Barnett, the object of which is to recover of said Barnett the sum of $237.50, with interest, alleged to be the balance due on account of land sold by Brashears for said Barnett. Brashears is a broker engaged in the business of selling real estate, and his petition alleges that on the 30th day of May, 1927, Barnett listed with him for sale certain real estate, and that on May 28, 1928, within the time said property was listed for sale, he sold the property for $6,000, thereby earning a commission of 5 per cent. on the gross price in amount $300, of which $62.50 has been paid, leaving $237.50 which is the subject-matter of the present suit. He prays for judgment against Barnett accordingly.

Barnett for answer denies owing the alleged indebtedness. He admits listing his property with the plaintiff for sale, but denies that it was done on May 30, 1927, and alleges that it was done some time prior thereto. He further alleges that the listing was for a period of twelve months. He admits that plaintiff sold part of his property within the time stipulated to J. R. Mayner for $2,500 and thereby earned a commission of $125. He alleges that he paid $62.50, or half the amount, to Cooper, plaintiff's agent; that plaintiff subsequently called on him for the balance, and at the same time represented to him that he had about negotiated the sale of the balance of his property for $3,500; that defendant thereupon paid the plaintiff $100 by means of a $100 bill, of which amount $62.50 was the balance due him on account of the Mayner sale and the remainder, $37.50, was to be applied as part of his commission, which would be due when the remaining property was sold; that plaintiff failed to sell the balance of his property, and therefore did not earn the $37.50.

He prays that plaintiff's demand be rejected and that he have judgment against the plaintiff in reconvention for $37.50.

There was judgment in favor of Barnett rejecting plaintiff's demand against him and in favor of Brashears rejecting defendant's demand in reconvention against him. Both parties have appealed.

The record shows that J. Sidney Barnett listed his property with the plaintiff for sale. Brashears sold part of it to J. R. Mayner for $2,500 and thereby earned a commission of $125, but the balance of the property remained unsold. Finally some time in June, 1928, plaintiff succeeded in finding a purchaser willing to pay $3,500, but, upon giving defendant notice of the fact, learned that Barnett had himself previously sold the property to another person for the same price.

Plaintiff testifies that defendant repeatedly verbally admitted owing him his commission on this last sale and time after time promised to pay him, but never did. The record shows that plaintiff made frequent demands on defendant, commencing with a letter of November 6, 1928 and ending with one dated May 18, 1931, requesting payment. These letters were never answered. Defendant's failure to answer any of these letters is a circumstance which we have taken into account in acting on the case as tending to support the contentions of the plaintiff. Defendant in testifying does not deny getting these letters and no explanation is offered for his failure to answer any of them. He testifies, however, that he repeatedly verbally informed plaintiff that he did not owe him anything, and this the plaintiff denies.

Barnett denies in his answer that the card, which evidences the contract between Brashears and himself, was signed on May 30, 1927, and alleges that it was signed on some earlier date. As a witness, he testifies that he listed his property with Brashears on April 30, 1927, and that the date, May 30th, which it purports to bear, is not its true date. The contract shows on its face that it was entered into for a period of twelve months with one month additional. This date, in so far as it concerns the sale of the property remaining after the Mayner sale, is the deciding factor as to plaintiff's right to a commission on account of same. The record shows that plaintiff found a purchaser for this property during the latter part of June, 1928. Consequently, if defendant listed his property on May 30, 1927, the plaintiff is justly entitled to a 5 per cent. commission on the $3,-500 in amount $175. But, if listing took place on April 30, 1927, as claimed by defendant, then the twelve months with one month additional had expired before plaintiff found a purchaser, and therefore defendant had the right to sell it himself, as he did do, and plaintiff has no right to any commission on said account.

The card, which evidences the agreement of the parties concerning the sale, is annexed to and made part of plaintiff's petition. It was offered in evidence and is before us for examination. Looking at the word "may,"

on its face, it is plain to the unaided eye that it was written over an erasure. With the aid of a magnifying glass, it is disclosed that the letter "A" was first written in the place now occupied by the letter "M." The "A" was partially erased and the "M" written in its place in such a way that the letter "A" cannot be made out except with the aid of a magnifying glass. After and next to the letter "A," the letter "p" was first written, but has been partially erased, and the place where it was made is now occupied by part of the "M" and by the letter "a." The balance of the erasure is now occupied by the letter "y" and a short horizontal line.

In writing over the erasure, ink of the same color in which the first writing was made was used. A faint marking appears along the latter part of the erasure, indicating that something else was made there, but was so thoroughly erased, that it cannot be determined what it was.

This card has been in the possession of the plaintiff from the time it was signed until it was offered in evidence. An erasure is open to explanation and may be explained, but the party who has always had the paper in his possession and whose right to recover depends on it carries the burden of proof.

In McMicken v. Beauchamp, 2 La. 290, the Supreme Court said: "We are of opinion the judge erred in receiving the instrument in evidence, with this apparent falsification— if the alteration be in a substantial part. (Citing authority.) * * * On examining the authority to which he refers in relation to this subject, we discover, that writings erased or interlined, are presumed to be false"—citing authorities. The dictum in McMicken v. Beauchamp was approved and followed in Pipes v. Hardesty, 9 La. Ann. 152, 61 Am. Dec. 202, and in Wheadon v. Turregano, 112 La. 931, 36 So. 808.

In Ruling Case Law, subject, "Alteration of Instruments," we find there is lack of harmony on the subject of this presumption in the decisions of the courts of other states, but the preponderance of opinion is in harmony with the civil law doctrine and as held in McMicken v. Beauchamp.

Plaintiff testifies that, as far as he knows, the document is now in the same condition in which it was at the time it was signed; that, at the time it was signed, he had in his employ a secretary and that all the handwriting on the card, except the signature of J. S. Barnett, is in the handwriting of his secretary; that he remembered independently of the contract, however, that it was signed on May 30, 1927. Counting from the date of the contract to the date of the trial, nearly six years have elapsed, and, as plaintiff produced no contemporaneous data to support his recollection, we take it that, were it not for the date itself, he would not undertake to say that he could remember that an ordinary business transaction of the kind took place in his office, on a day passed, for such a length of time.

The testimony of his secretary was taken on the subject. At the time of testifying she was not his secretary. Her employment had ceased nearly three years before. Shown the card, she testified that she recognized it, that the written part was all in her handwriting, and that it was signed on May 30, 1927.

"Q. It appears that there is a mark under that word (referring to the word, 'May'). Will you explain that? A. Maybe I made a blur or something but I don't remember. I know it was dated the 30th of May. I don't remember exactly the date except by looking at this. I know it was in the spring of 1927 in May.

"Q. You say you might have made an error? A. I never changed this at all. I mean I might have made an error but this has not been changed. I never changed it at all. I never at any time changed any of the contract."

Her attention was not directly pointed to the erasure and the letters appearing under it. Her answer, that she might have made a blur or something, does not explain the self-evident erasure and letters appearing as first written. We understand from her testimony that she was guided by the date presently appearing on the contract and that she never changed the date. Now it often happens that about the 1st of the month a person will for a time or two from habit write the month just past and, discovering the error, will correct it, but this date is next to the last day of the month.

Barnett testified that the card was signed on April 30, 1927, and that he marked the date on a calendar. But the calendar was not produced. Plaintiff's letters requesting payment were written long after the contract had expired, no matter whether the listing took place in April or May, 1927, and defendant did not answer setting up that the last sale had been made after the contract had expired. The question is close, but the erasure is evident, and the first two letters of the word "April" appear as stated.

■ The district judge, in acting on the case, does not say so in express words, but the judgment rendered shows that it was his conclusion that the card was signed prior to May 30, 1927, and that at the time the last sale was made plaintiff's right to sell and his right to a commission had expired. Otherwise his right to a commission on account of the property sold in June, 1928, would have been recognized. The evidence does not justify us in holding that the ruling was erroneous.

■■ The next question is whether $62.50 is due plaintiff on account of the sale made to J. R. Mayner. Defendant owes this amount to the plaintiff unless it has been paid. His defense to this part of plaintiff's demand is one of payment with the burden of proof on Barnett. The $62.50 paid by defendant to plaintiff's agent, Cooper, is not disputed. The question is whether the remaining half has been paid. Plaintiff and defendant contradict each other concerning the matter in such a way that there is no way of disposing of the question between the parties upon whom we look as being equally credible, except by taking for our guide the burden of proof.

The plaintiff and defendant have been dealing with each other for years. About a year previous to the time defendant listed his property with the plaintiff for sale, the plaintiff assisted defendant in buying some property from Ellis Barnett. Plaintiff called at defendant's residence and defendant paid him $100 for this service, the payment being made with a $100 bill. Brashears testifies that this $100, paid him by defendant for his service in the transaction with Ellis Barnett is the only time the defendant ever paid him $100, and that defendant's contention that he paid him another $100 at his residence at a subsequent time by means of a $100 bill is untrue.

Barnett testifies that a year or more after he had paid plaintiff for services rendered in his transaction with Ellis Barnett plaintiff again called on him at his residence and requested payment of the $62.50 due him on account of the Mayner sale, and that he paid plaintiff another $100 bill; that $62.50 of the amount was the balance due plaintiff on account of his commission in the Mayner sale; that the plaintiff represented to him at the time that he had about completed the sale of the balance of his property for $3,500, and it was agreed that the balance of the $100, which was $37.50, might be applied by plaintiff on his commission that would be due him on account of the sale of the balance of defendant's property, not quite effected, but which he had about consummated; that plaintiff never consummated the sale, which he claimed he was about to make; therefore plaintiff at the time he received the $62.50 was overpaid to the extent of $37.50.

Defendant testifies that his wife was present at the time he paid the plaintiff this $100 bill and heard their agreement on the subject. Nobody else, it seems, was present. Mrs. Barnett took the stand and testified that she was present when her husband paid Brashears this $100 bill; that $62.50 of the amount was the balance due plaintiff on account of his commission for the Mayner sale and $37.50 of the amount an overpayment to be applied on his commission for the sale of the balance of defendant's property, which plaintiff claimed he had about effected, but which last sale he failed to accomplish. Defendant and his wife testify to the fact of payment. Plaintiff alone testifies to the contrary.

The district judge did not give any except formal reasons for judgment, but the judgment rendered shows that he considered that defendant had established his plea of payment as to the $62.50. The question is close, but it is our conclusion, after considering all facts and circumstances, that the record does not justify our holding that the lower court erred in rejecting plaintiff's demand, and it follows, as a result of the holding, that an overpayment to the extent of $37.50 was made, which must be returned to defendant. The judgment appealed from, to the extent that defendant's demand in reconvention was rejected, is therefore erroneous.

For these reasons, the judgment appealed from to the extent that it rejects the demand of the plaintiff against the defendant for $237.50 is affirmed, but that part of the judgment, which rejects defendant's demand in reconvention against Brashears for $37.50 is annulled, avoided, and set aside, and judgment is now rendered in favor of J. Sidney Barnett and against John P. Brashears for $37.50, with legal interest thereon from judicial demand until paid; the plaintiff Brashears to pay the costs in both courts.