CHASEZ, Judge.
Plaintiff, CHF Finance Company, Inc., sued defendants, Robert J. Smith and Louis Majesty and his wife, Orna Lenora Stevens, for $576.03 balance on a note executed in 1958 (prior to the 1960 amendment to the Bankruptcy Act), representing both a renewal of an earlier loan by plaintiff to defendant, Majesty, and a further advance of money to Majesty, together with discounted interest.
This appeal concerns the liability of defendant, Majesty, only. His defense was a discharge in bankruptcy. Plaintiff argued its claim was excepted from the discharge by Sec. 17, sub. a(2) of the Bankruptcy Act, 11 U.S.C. § 35, sub. a(2), relative to debts for money obtained by false representations.
The trial court’s judgment was in favor of plaintiff in the amount of $221.39, the amount of the additional cash advance. Defendant, Majesty, brings this appeal.
In order to bring a debt within the cited exception to the discharge in bankruptcy, plaintiff bears the burden of proving, as stated in DeLatour v. Lala, 15 La.App. 276, 131 So. 211 (1930):
“* * * (1) That defendant made false representations; (2) that these representations were made with the intention of defrauding the plaintiff, and (3) that the plaintiff relied upon and was misled by the false pretenses or representations.”
*273 Defendant’s principal argument on this appeal is that plaintiff has failed to show the third element, that of reliance upon and misleading by the false representations.
The conclusion that defendant made false representations in an attempt and with the intent to fraudulently procure a loan, although also contested by defendant, is reasonably well established by the record. However, the record also makes it clear that defendant was not successful in that attempt.
Mrs. Yvonne Landry, who was at the time an employee of plaintiff, testified that she handled the transaction; that she told defendant his wife (also made defendant in this suit on the note) would have to sign; that Mr. Campos, plaintiff’s president, required defendant have a co-signer and therefore Mr. Smith (also made defendant in this suit on the note) also signed; that plaintiff checked on the credit standing of prospective borrowers with other creditors and with the Credit Bureau; while she could not recall in detail this particular transaction, “We always check with them [the Credit Bureau] before the loan’s approved.”
Mr. Francis Campos, plaintiff’s president, testified that Majesty was already indebted to plaintiff for $264.95 at the time of this loan, and had been a customer of plaintiff for about two years. He “would’nt deny” that plaintiff had not required a co-signer on the note already outstanding; he required a co-signer on the note in question because the financial statement showed defendant was already indebted in excess of $1,500.00.
Defendant’s testimony was that in an interview with Mr. Campos, when application for the loan was first made,
“He said, ‘You have a lot of bills, you have a lot of debts.’ I said, ‘Yes, sir, I need money, can you help me?’ He said, T believe we can, if you get your wife as a co-signer and another man, another co-signer.’ I said, ‘My wife will sign and I’ll get Robert Smith,’ and that’s the way that went.”
Plaintiff’s president makes the statements he “relied on” the false financial statement, and that he would not have made the loan had he known all of defendant’s outstanding debts. We are of the opinion that this testimony is an insufficient basis from which to conclude that plaintiff “relied upon and was misled by” defendant’s false financial statement, when other parts of the record disclose the situation fully detailed hereinabove.
Plaintiff cites CHF Finance Co., Inc. v. Corca, La.App., 152 So.2d 830 (1963), wherein this Court held that the naked requirement of a co-signer did not by itself negate the possibility of reliance on the borrower’s false financial statement, executed after being informed of the cosigner requirement. The Corea case is not controlling in the matter before us now because here, in addition to the cosigner requirement, the record further shows that plaintiff rejected defendant’s application on the basis of the financial statement now complained of, and therefore required the co-signer or co-signers; that plaintiff “always checked” with the Credit Bureau for credit information on loan applicants.
We also note the probability that plaintiff had other information on defendant in its files in connection with the earlier loan, in addition to such information as the Credit Bureau check may have revealed. In this connection we note this Court’s holding in Excel Finance Mid City, Inc. v. Meilleur, La.App., 137 So. 2d 503 (1962):
“When a small loan company has been doing business satisfactorily with a borrower for many years, and has the means to check his financial responsibility, especially within its own organization, but closes its eyes, it *274 should be estopped to complain of misrepresentation. If it were otherwise, a creditor could easily make its credit or loan immune from discharge in bankruptcy by the simple expedient of closing its eyes to what is obviously not true, and easily detected.”
We conclude that plaintiff’s president’s testimony is insufficient to show the reliance and misleading necessary for recovery; in our opinion the record makes it clear that plaintiff did not rely at all upon the financial statement and could not reasonably have been misled by it. The note sued upon is unenforceable against defendant, Majesty, because of his discharge in bankruptcy.
The judgment appealed from is therefore reversed, and it is now ordered, adjudged and decreed that there be judgment herein rendered in favor of defendant, Louis Majesty, and against plaintiff, C H F Finance Company, Inc., dismissing plaintiff’s demands against defendant, Majesty, at plaintiff’s cost.
Reversed and rendered.