SARTAIN, Judge.
This is a suit via ordinaria on a note by the original holder (plaintiff) and against the purported makers (defendants). The principal defense is that the signature of one of the makers (Mrs. Robert J. Boucher) is a forgery and therefore relieves the co-maker (Mr. Robert J. Boucher) of any liability thereunder.
The applicable law governing this litigation is found in L.R.S. 7:124 and 7:125. These provisions read as follows:
§ 124. Alterations, effect of
Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsers.
But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor.
*652 § 125. Materiality of alteration
Any alteration which changes:
(1) The date;
(2) The sum payable, either for principal or interest;
(3) The time or place of payment;
(4) The number or the relations of the parties;
(5) The medium or currency in which payment is to be made;
Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is material alteration.
Plaintiff’s petition alleges that it is the holder of one certain promissory note executed by the defendants on September 4, 1964 in the principal amount of $2,880.00 and payable at the rate of $120.00 per month for 24 months, commencing on October 15, 1964, with interest at the rate of eight percent per annum from maturity until paid in full. Plaintiff further avers that the note is in arrears as of February 15, 1966, when a balance was due thereon in the sum of $1420.00.
Various reconventional and third party demands were filed which were dismissed voluntarily during the course of the trial. In addition, plaintiff voluntarily dismissed Mrs. Edwina M. Boucher as a defendant. Judgment was rendered in favor of the plaintiff and against the remaining defendant in the amount of $1420.00 plus interest thereon at the rate of eight percent per an-num from February 15, 1966, until paid, together with attorneys’ fees in the amount of twenty-five percent of the aggregate of said principal and interest, together with all costs of these proceedings. From which judgment Mr. Robert J. Boucher has appealed. Oral or written reasons were not assigned by the trier of fact. We reverse.
The plaintiff, Allstate Credit Plan Oak, Inc.,[1] is located in the City of New Orleans .and at the time of the execution of the note sued on was managed by Mr. Arthur Williams. Defendants are residents of St. Tammany Parish.
Mr. Williams testified that on or about September 4, 1964, a Mr. Charles J. Boucher, III, brother of Robert J. Boucher, applied to them for a loan. He (Charles) was advised that inasmuch as he worked for a furniture dealer which financed the sale of merchandise through the plaintiff, the loan could not be made in his name but that the loan could be made in the name of a relative or friend if such individual’s credit warranted it. The name of Robert J. Boucher was suggested, his credit was approved, and the note and accompanying chattel mortgage were prepared, all without the knowledge of Mr. Robert Boucher. A Mr. Milton Kowen, plaintiff’s assistant manager, went with Mr. Charles Boucher to Kaiser Aluminum Corporation, Mr. Robert Boucher’s place of employment, for the purpose of securing the latter’s signature. When the note and the chattel mortgage were returned to him (Williams), he issued a check in the amount of $1,958.00 payable to the order of “Robert J. Boucher” and gave the same to Mr. Charles Boucher. Mr. Williams also testified that the first payment of $475.00 as a credit was made by Mr. Charles Boucher, that a subsequent payment was brought to plaintiff’s office by one of Mr. Charles Boucher’s employees, and that the remainder of the payments were either “sent in to the office or mailed in.”
Mr. Milton Kowen, plaintiff’s assistant manager, acknowledged that he accompanied Mr. Charles Boucher to Mr. Robert Boucher’s place of employment. He stated that he advised Mr. Robert Boucher that he was signing a note and a chattel mortgage. The record is silent as to who obtained the signature of Mrs. Edwina M. Boucher. Mr. Kowen stated that he did not see her sign it but thought that the *653 note and chattel mortgage “was brought out to her.” Mr. Kowen was emphatic in his testimony that all pertinent data was on the note when it was presented to Mr. Robert Boucher for signing except the blank showing the date when the final payment was due. He denies that he ever told Mr. Robert Boucher that the papers he presented to him for signing were only an application for a loan.
Mr. Robert J. Boucher testified that he knew nothing of the transaction until he was called to the gate by his brother, Charles, who was accompanied by Mr. Kowen, and that he thought he was signing an application for a loan and would not, under any circumstances, borrow money for his brother without discussing the matter first with his wife. Nonetheless, during the course of the trial, Mr. Robert J. Boucher acknowledged that the signatures on the note and the chattel mortgage were his. He further testified that he received none of the proceeds from the loan and that his signature endorsing plaintiff’s check was forged.
Mrs. Boucher testified that she knew nothing of this transaction until she received a credit memo showing that the sum of $475.00 had been paid on the loan. Whereupon she went to plaintiff’s place of business and told Mr. Williams that she had never signed any note or chattel mortgage. Mr. Williams showed her the note and she advised him that her signature thereon was a forgery. Thereafter she received no further communication from the plaintiff until this action was instituted. Plaintiff’s ledger card introduced in evidence shows the following credits:
10/16/64 $475.00
1/25/65 200.00
4/ 5/65 200.00
6/ 7/65 105.00
8/ 9/65 240.00
1/31/66 240.00
It is apparent that Mrs. Boucher’s conversation with Mr. Williams occurred shortly after October 16, 1964. Further, the ledger card contains the following notation: “Charles Boucher suppose to be paying this A/C.” The record before us clearly supports the conclusion that the signature of Mrs. Edwina M. Boucher on the note is a forgery. Plaintiff strenuously urges that its voluntary dismissal of Mrs. Boucher as a party defendant was not an admission that Mrs. Boucher’s signature was a forgery and that Mrs. Boucher has failed to bear the burden of proving the forgery. Accordingly, plaintiff reasons that there has been no showing of a material alteration which would relieve Mr. Robert J. Boucher of the liability imposed upon him.
We would be more inclined to agree with this contention if the dismissal itself was the only evidence relating to the forgery. However, this is not the case. The trial judge, prior to the dismissal, made the following comment:
Now, I take it from your statement that Mrs. Boucher still maintains that she did not sign it. If she didn’t sign it then it is a forgery, then she can’t be cast in judgment but if he signed it, we know what the law is, but I am just sitting her asking you to tell me what I am listening for.
And after Mrs. Boucher had again denied that her signature was on the note, counsel for the plaintiff made the following motion :
Your Honor, if I may at this time, I will move to dismiss this lady, Mrs. Boucher, as a defendant in this suit because my information is maybe she didn’t sign this note. I don’t know but we have all of the proof that we sought anyway. I think, and this is argument, but at this time I will move to dismiss her as a party defendant.
The “information” most likely referred to in the above quote is that given by Mrs. Boucher directly to Mr. Arthur Williams shortly after the first payment in October of 1964 when Mrs. Boucher repudiated her signature in the presence of Mr. Williams.
*654 We make the following findings of fact: (1) that the note presented to Mr. Boucher was complete when signed by him, (2) that the signature of Mrs. Edwina M. Boucher is a forgery, (3) that plaintiff was put on notice as early as October of 1964 that Mrs. Boucher’s signature was a forgery, (4) that after Mrs. Boucher’s protest all further communication relative to this transaction was directed to Mr. Charles Boucher until suit was instituted on September 20, 1967, (5) that the face of the note shows that the makers were to be “ROBERT J. BOUCHER AND WIFE EDWINA.” Therefore the question for resolution is whether the forgery of a comaker’s signature absolves the other comaker of liability under the note.
At the outset it should be noted that this litigation does not involve a holder in due course.
Defendant relies on the case of Thompson v. Taylor, 192 So.2d 609 (3rd La.App., 1966) authored by Judge (now Justice) Tate from which decision the following is quoted:
192 So.2d 609, 611, 612
The maker Taylor’s liability on the notes themselves is governed by LSA-R.S. 7:124, 7:125 of the Negotiable Instrument Law.
Under LSA-R.S. 7:125(4), an alteration which changes the number of the relations of the parties is a material alteration. The effect of such an alteration is set forth in LSA-R.S. 7:124: ‘Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration, and subsequent indorsers. # * * >
By reason of these statutory provisions, the consistent jurisprudence holds that the note is voided against the maker Taylor by the addition of his wife’s name as a co-maker.[2]
The decisions interpreting these provisions of the Uniform Negotiable Instrument Law hold that the addition of the name of another maker to a negotiable instrument is a material alteration which absolves the original nonconsenting maker of liability on the note to anyone except a holder in due course. See Stacey v. Fritzler, 160 Or. 231, 84 P.2d 97, 119 A.L.R. 887 (1939) (addition of wife’s name as co-maker; discusses authorities) ; Annotation, Addition of maker * * * as material alteration discharging nonconsenting party, 119 A.L.R. 898 (see pp. 898-899: ‘It is clearly the general rule * * * that the addition of a maker to commercial paper is such a material alteration of the paper that non-consenting obligors thereon are relieved from liability thereunder.’); Britton, Bills and Notes, Section 278 (2d ed., 1961); 3 C.J.S. Alteration of Instruments § 30(1); 4 Am.Jur.2d Alteration of Instruments, Section 47; 5 U.L.A., Section 125. For Louisiana cases holding that a material alteration precludes recovery on a note against a party who did not assent to the alteration, see American Guaranty Co. v. Sunset Realty & Planting Co., 208 La. 772, 23 So.2d 409, 445; Watts v. Brooks, La.App., 1 Cir., 136 So.2d 403 and cases cited therein; Simmons v. Green, 2 Cir., 18 La.App.492, 138 So. 679.
The rationale of this rule avoiding a note to which the name of another maker has been added was stated in Singleton v. McQuerry, 85 Ky. 41, 2 S.W. 652, 653 (1887): ‘The addition of another name changes the number of the parties, *655 the ratio of contribution, their relative rights, and the character and description of the instrument. The obligor’s first signing may thereby be subjected to a change of jurisdiction in the event of litigation * * *. If an additional name is procured in order to strengthen the debt, and not for some undue advantage, the holder can easily obtain the assent of the previous obligor. By the addition, the paper speaks a different language, and has a different legal operation, thus showing that the change is material.’ See also 4 Am.Jur.2d Alteration of Instruments, Section 47.
Hence, the addition of his wife’s name to the notes without the knowledge of the defendant Taylor constituted a material alteration which absolved him of liability on the notes.
In Thompson the court found that the plaintiff had forged the name of the defendant’s wife on three notes prior to the negotiation of these notes to a third party. To this extent the facts in the cited case differ from those in the case at bar. L.R. S. 7:125(4), above, specifically states that any change in the number of the parties is a material alteration. While the plaintiff here cannot be said to have participated in the forgery, it certainly acquiesced in it. Therefore, we hold that the rationale of the holding in Thompson should be applied in the instant matter because the plaintiff, after having been put on notice of the forgery, acquiesced in the same. It did so for a period of fifteen months, i. e., November, 1964 through January, 1966. The record is completely silent as to any effort made by the plaintiff to correct an obvious infirmity in the note.
Plaintiff cannot now be heard to complain that the forged signature of Mrs. Boucher is not a material alteration after having permitted Mr. Charles Boucher to make payments spanning a period of fifteen months and then, once the note is in default, proceed against the defendants.
Accordingly, for the above reasons, the judgment of the district court is reversed and judgment is rendered herein in favor of the defendant, Robert J. Boucher, and against the plaintiff, Allstate Credit Plan Oak, Inc., dismissing plaintiff’s suit at its cost.
Reversed and rendered.

. Formerly named Arthur Williams Credit Plan, Inc.

. However, since the payee Thompson had made or assented to the alteration, his liability to McMillan, the endorser, was not discharged. The trial court so held in a previous suit, the appeal in which was dismissed in this court. McMillen Feeder Finance Corp. v. Thompson, La.App., 3 Cir., 171 So.2d 827.